CHANEY *v.* DUNCAN.

4-4827

Opinion delivered November 22, 1937.

*Chas. A. Walls,* for appellant.

*W. P. Beard, Carl F. Jaggers* and *P. A. Lasley,* for appellee.

MEHAFFY, J. This action was begun in the Lonoke circuit court by J. B. Duncan and General Exchange Insurance Corporation against the appellant, W. S. Chaney, to recover damages for injury to Duncan's car, alleged to have been caused by the negligence of the appellant. J. B. Duncan's car was being driven by Ambrose Hudson, and appellant's truck was driven by Ray Chaney, son of W. S. Chaney, who was 27 years of age.

The General Exchange Insurance Corporation had insured Duncan's car, but under the terms of the policy the first $50 of the damage was payable by J. B. Duncan and the balance by the company. The insurance company had the car repaired at a cost of $284.22, of which amount Duncan paid $50, and Duncan gave an assignment of his interest in the cause of action to the insurance company, and this suit was brought to recover the sum of $284.22.

The appellant, W. S. Chaney, filed answer denying all the material allegations in the complaint, and also pleaded that the subrogation agreement was not binding on appellant; that the settlement made between the parties did not apply for the reason that there was no liability on W. S. Chaney for the acts of his son, and that the insurance company was not entitled to be subrogated in whole or in part for the payments made. An amended complaint was filed alleging Ray Chaney was a careless and reckless driver and this was known to appellant.

There was a verdict and judgment for $284.22, and this appeal is prosecuted to reverse said judgment.

The appellant filed a cross-complaint seeking a judgment for damages to his truck in the sum of $396. The substance of the evidence is as follows:

Ambrose Hudson testified that he lived at England, Arkansas, and on the night of July 5, 1935, was driving a Chevrolet, 1934, sedan owned by Mr. J. B. Duncan; had been to Coy and was going west toward England between seven and eight o'clock p. m.; his lights were burning, and on his return to England had a collision with a car driven by the Chaney boy; the appellant's boy was driving the car; they were coming back from Coy; it was getting dark, and he turned his lights on about three miles from town, and the other car ran into the car witness was driving, about 200 yards east of the bridge; witness was over as far as he could get; could not have pulled any further over without going into a ditch; he was on the right side of the road, and Chaney came along and hit the car witness was driving on the right side of the highway; Chaney got out of his car and came back to witness; Chaney walked like he was drunk and wanted to

have a fight with witness; he did not smell liquor on his breath, but he walked like he was drunk; Chaney went on to England and witness stayed there with the car; Chaney came back with another fellow named Fisher and when they got back the Chaney boy had passed out and was lying up in the cab; this was about 30 minutes after the accident; when asked what he meant by being passed out, he said he was drunk; Fisher was driving when they came back and the Chaney boy was asleep; at the time of the accident Mrs. Duncan and witness were in the car; he was driving; there was no one in the truck with the Chaney boy; the car driven by Chaney hit the side of the witness' car and tore the left front wheel off; he swerved his car right into witness' car; saw the car next day and the left front wheel was torn completely off and it had knee-action and the whole thing was torn off, and the whole right-hand side where it had turned over on the top, was smashed.

A picture of the car was introduced, over the objection of the appellant. Another picture of the car was introduced which witness stated represented the condition of the Duncan car after the collision occurred; both cars turned over. After the Chaney truck struck witness' car, it ran about 200 feet; the truck was in the ditch; witness' car was across the highway after the accident, but still on the highway; witness was never in a serious accident before. Witness was driving about 35 miles an hour. Mrs. Duncan was present at the time of the accident, and Chaney did not say anything directly to her, but his remarks and attitude were insulting.

W. E. Gott, an adjuster for the insurance corporation, testified that he made a thorough examination of the car before it was repaired; the amount of damages was $284.22; he also testified about the expiration of the policy; witness also testified about the subrogation agreement and the payment to Duncan of $235, Duncan being required, under the terms of the policy, to pay $50 of the damages.

J. T. Dupree testified that he lived in the vicinity where the accident occurred; it was about a half mile east

of his home; he went down after the accident occurred; Chaney appeared to have been drinking; had the reputation of being a reckless driver, and has had many accidents; he noticed the place where the collision occurred; there was loose gravel and both cars appeared to be too near the center of the highway.

J. B. Duncan testified that his sedan was damaged in the collision; that he carried insurance on his car with a deductible clause of $50; testified about the subrogation agreement; the total damages to witness' car was $285; he received $235 from the insurance corporation.

W. P. Wilbanks testified that he was a peace officer at England and acquainted with Ray Chaney; arrested him once for reckless driving, and heard about Chaney running into a cow and killing it; was present when Chaney was convicted for reckless driving; Chaney has the reputation of being a careless and reckless driver, and of driving a car while drunk.

Judge J. M. Malone testified that he was county judge of Lonoke county and in 1935 was a justice of the peace, and that Ray Chaney was before him on a charge of reckless driving and driving while intoxicated, and he revoked Chaney's license; Chaney's license was revoked for 30 days, and at the end of that time he started driving a car again.

J. B. Duncan also testified that Chaney had the reputation of being a careless and reckless driver.

W. S. Chaney, the owner of the truck, testified that he lived at Coy, Lonoke county, is a farmer and ginner, and the father of Ray Chaney; he did not give his son, Ray Chaney, permission to use the truck and did not know that he came to the house and got it; did not send Ray Chaney on a mission and did not know that he was in England that day; did not learn this until the next morning; he kept the keys to his truck at his home, usually on the mantle; any one in the home could come along and pick them up; Ray had previously driven the truck, as well as other members of the family; witness knew nothing about the casing being taken to England to be repaired; the truck was the only car witness owned; the

keys were on the mantle and any Chaney could come and get them; he recalled the instance when Ray Chaney ran into and killed a cow and his driving license was revoked for 30 days; witness did not know the details of other accidents in which his son was involved.

Ray Chaney testified that he was the son of W. S. Chaney, is 27 years old, and lives at Coy, Lonoke county, Arkansas; on July 5, 1935, witness had gone to one of his brothers to see about taking their sister to Little Rock; when he got back he had a flat, could not get the extra tire off, broke the lock and took it off, and took his father's truck in order to take it to town for repairs; he first used his brother's car and then his father's truck; the truck was in the garage at his father's home; he did not get anyone's permission to use the truck, just went in there and got it; the road had been graded that day and there was a ridge of dirt and in order to be on his side of the road, Hudson would have to travel on the loose gravel; when the cars collided Hudson was on witness' side of the highway; witness did not realize anything was going to happen until after it happened; Hudson was going very fast; witness' car traveled about 150 feet after it was hit; did not say anything insulting to Mrs. Duncan; heard Hudson make a remark about being afraid to hit the loose gravel, and that was why he was on witness' side of the road; witness admitted that he had had a drink before he left England; witness bought one pint of liquor after he got to England and invited a friend to drink with him and they took two small drinks; the bottle was not empty when they left England; he had been arrested once in England for drunkenness; he had been locked up once for being drunk; does not get drunk often; he took the keys to his father's truck off the mantle; he got the keys whenever he wanted to use the truck; his father might have refused to let him have the truck once or twice, but not much more than that; he drove it frequently; after the accident he went to England and took some more drinks, but was not drunk when he came back 45 minutes later; witness had been in about 9 or 10 accidents; his father did not know about all of them.

Marvin Cantrell testified that he heard Hudson telling Ray about some loose gravel, and it seemed like he was afraid to take the loose gravel; Chaney was not drunk at that time.

Charlie Jackson testified that he saw Chaney about dark on the day of the accident, and he was not drunk and did not appear to have been drinking; he has known Chaney 8 or 10 years and they are good friends.

Joe Jackson testified that he was in the service station when Chaney came in a little after dark, and did not see any indication that Chaney was intoxicated.

Appellant insists that the case should be reversed and dismissed, first, because the testimony is undisputed that Chaney was not on a mission for his father. If Chaney was on a mission for his father, or was acting as the agent or servant of his father in driving the truck, his father would, of course, be liable for his negligence in operating the truck. But, regardless of whether he was his father's agent or on a mission for him, if the father, knowing of his habit of recklessness and incompetency because of drunkenness, permitted the son to drive the truck, and any injury occurred as a result of the son's negligence, the father would be liable.

The rule as to the liability of a person in trusting his automobile to an incompetent person is stated in Berry on Automobiles, Seventh Edition, Vol. 4, p. 710 *et seq.*, as follows:

"Aside from the relation of master and servant, the owner of an automobile may be rendered liable for injuries inflicted by its operation by one whom he has permitted to drive the same on the ground that such person, by reason of his want of age or experience, or his physical or mental condition, or his known habit of recklessness, is incompetent to safely operate the machine.

"An automobile is a machine that is capable of doing great damage if not carefully handled, and for this reason the owner must use care in allowing others to assume control over it. If he intrusts it to a child of such tender years that the probable consequence is that he will injure others in the operation of the car, or if the

person permitted to operate the car is known to be incompetent and incapable of properly running it, although not a child, the owner will be held accountable for the damage done, because his negligence in intrusting the car to an incompetent person is deemed to be the proximate cause of the damage. In such a case of mere permissive use, the liability of the owner would rest, not alone upon the fact of ownership, but upon the combined negligence of the owner in intrusting the machine to an incompetent driver, and of the driver in its operation." See, also, *Smith* v. *Nealey,* 162 Wash. 160, 298 Pac. 345; *Mitchell* v. *Churches,* 119 Wash. 547, 206 Pac. 6, 36 A. L. R. 1132; *L. P. Tyree, Admr.,* v. *George C. Tudor,* 183 N. C. 340, 111 S. E. 714; *Raub* v. *Donn,* 254 Pa. St. 203, 98 Atl. 861.

It is next contended by the appellant that the court erred in failing and refusing to give his instruction No. 1. If Duncan's car was injured by the carelessness of the driver of Chaney's truck, and Chaney is liable for the damages done, it could, of course, make no difference to appellant whether the amount recovered was payable to the insurance company or to Duncan. If appellant is liable for the damages, it is immaterial to appellant to whom they are paid.

Appellant calls attention to the case of *Layes* v. *Harris,* 187 Ark. 1107, 63 S. W. (2d) 971. We said in that case: "In order for the father to be liable for the negligence of his son in driving his father's automobile, the relation of principal and agent or master and servant must exist, or the father must have permitted his son to drive the car, knowing that he was a careless and reckless driver."

It is not contended in this case that the father would be liable unless the relation of principal and agent or master and servant existed, or unless the appellant permitted the son to drive his car, knowing that he was a careless and reckless driver.

Numbers of cases are cited by appellant, holding that the liability of the father for an injury caused by his son's driving his car, depends upon the existence of the relation of master and servant or principal and agent;

but there are no cases, so far as we know, and our attention has not been called to any by appellant, holding that one will not be liable where he permits his car to be driven by one known to be a careless and reckless driver. In such case the owner of the car is not liable as master or principal, but, if liable at all, it is because of his negligence in permitting one known to be a reckless or careless driver to drive his car.

It is, also, contended by the appellant that the court erred in permitting witnesses to testify as to the intoxication of Ray Chaney at other times. This evidence was admissible as tending to show that he was in the habit of drinking intoxicating liquor, and careless and reckless in driving a car, and as tending to show that the appellant knew these facts.

There is no dispute about the law that if anyone permits another to drive his car, knowing such one to be a reckless or careless driver, or knowing that he is in the habit of becoming intoxicated and driving a car in this condition, he will be liable for any injury caused by the negligence of such driver.

The evidence above set out is sufficient to show not only that the driver was negligent and careless, but that the appellant knew these facts. It is true that the evidence is in conflict, but whether the witnesses were telling the truth and the weight of their testimony, were questions for the jury.

We have examined carefully the instructions given and refused, and find that there was no error in the court's giving or refusing to give instructions.

If appellant knew that his son was a careless and reckless driver, he would be liable for any negligence of the son causing injury, when permitted to use his car. Whether he was a reckless and careless driver and whether his father knew his habits of carelessness and recklessness, were questions of fact properly submitted to the jury, and its verdict is conclusive here.

The judgment is affirmed.