Robinson v. Martin.

5-1936

328 S. W. 2d 260

Opinion delivered October 26, 1959.

*Dinning & Dinning,* for appellant.

*Cracraft & Cracraft,* for appellee.

Carleton Harris, Chief Justice. Suit was instituted by Maggie L. Martin, appellee, for the possession of a motor vehicle held by appellant, Rosetta Robinson. Affidavit for delivery was executed by appellee, in which she asserted the value of the vehicle (a 1955 Ford convertible automobile) to be $1,250, and the vehicle was seized under a Writ of Replevin. Appellant answered, denying that Maggie Martin was the owner of the vehicle, or had any right or claim to same, and asserted, to the contrary, that she (appellant) was the sole and exclusive owner of the property. At the conclusion of the testimony, appellee moved for an instructed verdict, which was acted upon by the court as follows:

"The motion for an instructed verdict will be granted in favor of the Plaintiff for the reason that the certificate of title introduced in evidence by the Plaintiff makes a *prima facie* case insofar as the title to the vehicle is concerned and this Court holds there is no evidence to rebut or overturn a *prima facie* case."

Whereupon, the court instructed the jury to return a verdict for appellee, and judgment was entered in accordance therewith. From such judgment comes this appeal.

Admittedly, the automobile in question had belonged to Willie Bridgman at the time of his death, which occurred on January 16, 1958. Appellee claims to be the daughter of the deceased, and appellant had lived with Bridgman for several years prior to his death.

Appellant contends that the court erred in excluding her testimony that Bridgman had stated he was buying the automobile for her (appellant), and further, that the deceased in referring to appellee, "always told me that she was his step-daughter"; still further, that Bridgman had stated he was not married to the mother of Maggie Martin. The court held that the "Dead Man Statute"[1] applied, and the witness could not testify to anything told to her by Bridgman. The transcript reflects the following colloquy between the court and counsel:

"The Court: You can't testify to that, he is dead.

Counsel: Isn't there an exception to that rule?

The Court: No, sir, I don't think so.

Counsel: This is not a contest with the dead man, this is a contest between two persons claiming the car.

The Court: Nevertheless, the Court holds the "Dead Man's Statute" applies and witnesses can't testify to anything the dead man told them.

Counsel: As to the relationship between the parties?

The Court: Yes, sir.

Counsel: Doesn't the court think there is an exception to the "Dead Man's Statute" where relations between members of the family are involved?

---

[1] Section 2, under "Schedule" of Arkansas Constitution of 1874.

The Court: That was not involved in the question you just asked the witness, was it?

Counsel: If the Court holds differently, *it is all right.*[2]

The Court: Proceed.''

Under this state of the record, it becomes unnecessary for this Court to pass on appellant's contention, since no proper objection was made to the trial court's ruling which precluded the evidence offered.

The instructed verdict was based on the certificate of title, introduced by appellee, showing herself as owner, issued by the State Department of Revenues, on May 8, 1958, which made a *prima facie* case of ownership; the trial court found that there was no evidence to rebut this *prima facie* case. We do not agree. Though she held the certificate of title,[3] appellee's claim to the automobile is actually based on the contention that she is the daughter, and only heir, of deceased. It might be here noted that her testimony relative thereto, was somewhat less than positive. For instance, ''Q. * * * as a matter of fact, you are not his daughter, are you? A. He is the only father I know anything about. Q. Don't you know he always called you his stepdaughter? A. No, sir, if he did, I didn't know anything about it. Q. He was not married to your mother at the time of your birth, was he? A. That is what my mother said. Q. When do you first remember seeing Willie Bridgman? A. I was a very small kid, he was the only father I knew anything about. * * * Q. You make no claim to the car at all except as the daughter and only heir of Willie Bridgman? A. That is right. Q. Are you his daughter? A. He is the only father I know

---

[2] Emphasis supplied.

[3] The testimony relative to appellee acquiring the certificate of title is rather vague. There is an indication that the clearing of the title was handled through an attorney, but this is not definite. From the testimony of appellee: "Q. I hand you a paper which purports to be a certificate of title to a motor vehicle, have you ever seen it before? A. Yes, sir. Q. Where did you see it? A. It was sent to me. Q. From where? A. I don't remember where, but I was living on Route 2, Lexa. * * * Q. You don't know who caused this to be issued, do you? Did Mr. Sheffield get this for you? A. I don't know, it was sent to me."

anything about, if he was not my father, I was never told that he was not. Q. Were you ever told that he was? A. Yes, sir, my mother told me he was.''

The certificate of title was not obtained until several months after the death of Bridgman. Appellant had possession of the automobile until it was taken from her by virtue of the Order of Delivery. According to her testimony, she had in her possession the ''pink slip'' and other papers relating to the title of the car, but turned them over to appellee. From the testimony:

''Q. How did she get the papers away from you?

A. She came to my house and told me she would help me. I let her have the papers because of the shock, the man died all of a sudden, and she claimed she came to help me.

Q. You had all of the papers in your possession?

A. Yes, sir.

Q. She told you she was going to help you?

A. That is right.

Q. That is the reason you gave her the papers?

A. That is right.

Q. Then you had possession of this property from the time it was bought until he died?

A. Yes, sir.''

As reflected by the evidence, Bridgman worked on a boat which would dock at Memphis, and appellant would drive the car to Memphis and pick him up. She further testified that she operated the car for her personal use. While, as previously set out, appellee held this certificate of title at the time of instituting the suit, — we have held that the certificate *is not title itself, but only evidence of title. House* v. *Hodges,* 227 Ark. 458, 299 S. W. 2d 201. We are of the opinion that the evidence was sufficient to place in issue whether appellant

held the vehicle by gift, or whether appellee was actually the owner.

The judgment is accordingly reversed, and the cause remanded.