ROOK v. MOSELEY.

5-2879                                    365 S. W. 2d 718

Opinion delivered March 18, 1963.

*Barber, Henry, Thurman & McCaskill,* for appellant.

*L. Weems Trussell, DuVal L. Purkins,* for appellee.

ED. F. McFADDIN, Associate Justice. This cause stems from a traffic mishap which occurred in Fordyce on October 19, 1961. Mrs. Milner, accompanied by Mrs. Moseley, was driving north on U. S. Highway No. 67 and gave a signal and proceeded to turn right. The other car, driven by R. T. Livingston and proceeding in the same direction, was behind the Milner car, and crashed into the Milner car, causing property damage and personal injuries to the ladies (appellees here), who filed this action for damages against both R. T. Livingston and C. C. Rook.

It was alleged, and is urged here, that Rook was the owner of the vehicle Livingston was driving; that Rook allowed Livingston to drive the car, either as bailee or agent; that Rook knew, or should have known by the exercise of ordinary care, that Livingston was a careless and reckless driver and drove while intoxicated; and that Livingston's driving while intoxicated was the cause of the traffic mishap in this case. Livingston filed general denial; Rook denied ownership of the car, alleging a sale to Livingston; and also claimed no knowledge or reason to suspect that Livingston was other than a fine and competent driver at all times. Jury verdict was in favor of the plaintiffs and against both defendants. Rook alone prosecutes this appeal, and urges four points. We group these in suitable topic headings.

I. *Ownership Of The Car Livingston Was Driving.* Appellant Rook insists that all the evidence shows that he did not own the vehicle Livingston was driving; and that the Trial Court should have given an instructed verdict

in favor of Rook. The evidence shows that the Livingston vehicle was registered under the Motor Vehicle Title Certificate Law (§ 75-101 *et seq.* Ark. Stats.) in the name of "C. C. Rook or Mrs. C. C. Rook." Rook and Livingston both testified: that on October 16, 1961 (three days before the traffic mishap here involved) Rook sold the automobile to Livingston for an agreed price of $200.00; and that Livingston paid $50.00 in cash at the time, and was to pay the balance at the rate of $50.00 per m nth. There was no contemporaneous writing to evidence this alleged sale to Livingston; but Rook and Livingston both testified that some time about November 1, 1961 (after the mishap) they went before a Justice of the Peace and executed a title certificate assignment, and that by May 1, 1962, Livingston had paid Rook the full $200.00 for the car.

On the other hand, the Chief of Police of Fordyce testified that immediately after the collision Livingston told him that he (Livingston) did not own the car and was only trying it.[1] This testimony of the Chief of Police was admissible to contradict the testimony of Livingston, which was to the effect that he had bought the car. Livingston and Rook are both parties in the case, so their testimony is not undisputed as a matter of law. *Ball* v. *Hail,* 196 Ark. 491, 118 S. W. 2d 668. The fact that the car was, at the time of the mishap, registered in the name of C. C. Rook or Mrs. C. C. Rook, is evidence of title in them. *Robinson* v. *Martin,* 231 Ark. 43, 328 S. W. 2d 260. There is nothing to show that Mrs. Rook, prior to the traffic mishap, made any sale; and so the only testimony of the sale is that of Rook and Livingston; and, as aforesaid, their testimony is disputed.

Section 75-157 Ark. Stats., which is a part of the Certificate of Title Law governing vehicles, provides:

"The owner of a motor vehicle who has made a *bona fide* sale or transfer of his title or interest and who has

---

[1] Here is the question which was admitted over the objection of Rook: "Q. State what your investigation developed as to the ownership of the car as stated by the driver of the 1950 Plymouth." "A. I asked him did the car belong to him and he said no. Said he was just trying the car out."

delivered possession of such vehicle and the certificate of title thereto properly indorsed to the purchaser or transferee shall not be liable for any damages thereafter resulting from negligent operation of such vehicle by another.''

It is not claimed that Rook ever properly endorsed the title certificate to the purchaser or transferee so as to be exempted from liability under this section. Of course, if he had made a *bona fide* sale to Livingston before the traffic mishap such could have avoided his liability. *House* v. *Hodges,* 227 Ark. 458, 299 S. W. 2d 201; but the question of a *bona fide* sale to Livingston was the question in dispute; and we think a case was made for the jury as to the ownership of the car at the time of the traffic mishap. By its verdict, the jury found Rook to have been the owner; and there was evidence to support such finding.

II. *Rook's Liability For Livingston's Mishap.* The plaintiffs-appellees sought to hold Rook liable for the damages caused by Livingston on the theory that Rook had entrusted his automobile to Livingston, who he knew, or with the exercise of ordinary care should have known, was a person who drove an automobile while intoxicated; and that Livingston did drive the automobile while intoxicated, and caused damages to the plaintiffs. We have a number of cases which recognize that liability may be imposed on an owner under such circumstances.[2] See *Chaney* v. *Duncan,* 194 Ark. 1076, 110 S. W. 2d 21; *Ozan Lbr. Co.* v. *McNeely,* 214 Ark. 657, 217 S. W. 2d 341; *Ark.-*

---

[2] In *Chaney* v. *Duncan,* 194 Ark. 1076, 110 S. W. 2d 21, we quoted from Berry on Automobiles, 7th edition:

" 'Aside from the relation of master and servant, the owner of an automobile may be rendered liable for injuries inflicted by its operation by one whom he has permitted to drive the same on the ground that such person, by reason of his want of age or experience, or his physical or mental condition, or his known habit of recklessness, is incompetent to safely operate the machine . . . if the person permitted to operate the car is known to be incompetent and incapable of properly running it . . . the owner will be held accountable for the damage done because his negligence in entrusting the car to an incompetent person is deemed to be the proximate cause of the damage. In such a case of mere permissive use, the liability of the owner would rest, not alone upon the fact of ownership, but upon the combined negligence of the owner in entrusting the machine to an incompetent driver, and of the driver in its operation.' "

*La. Lbr. Co.* v. *Causey,* 228 Ark. 1130, 312 S. W. 2d 909; and *Waller* v. *Yarbrough,* 232 Ark. 258, 337 S. W. 2d 641. See also Am. Jur. Vol. 5A, page 590 *et seq.,* ''Automobiles and Highway Traffic,'' § 580 *et seq.* In Vol. 5A of American Jurisprudence, at page 592, in discussing the owner's knowledge of the driver's unfitness, the holdings are summarized:

''In order to hold the owner of an automobile liable under the common law rule charging him with liability for the' negligence of an incompetent, reckless, or unfit driver to whom he entrusted his car, the plaintiff must establish by competent evidence that the owner had knowledge of the driver's incompetent, inexperience, or reckless tendency as an operator, *or that, in the exercise of ordinary care, he should have known this from facts and circumstances with which he was acquainted.* That knowledge may be established by the fact that he knew of specific instances of carelessness or recklessness or *by the proof that the driver's incompetence was generally known in the community.''* (Emphasis our own.[3])

It is practically undisputed that Livingston was thoroughly intoxicated at the time of the traffic mishap, which occurred on October 19, 1961; and Livingston has not even appealed from the judgment against him. It was also thoroughly established that Livingston had been guilty of driving while intoxicated on other occasions. But Rook stoutly denied that he had any knowledge, or reason to suspect, that Livingston would drive a car while intoxicated. The plaintiffs-appellees were unable to show that anyone had ever informed Rook that Livingston was a person who drove a car while intoxicated; so the plaintiffs-appellees undertook to show that Rook, by the exercise of ordinary care, should have known that Livingston was a person who drove a car while intoxicated because such was Livingston's general reputation in the community in which he and Rook

---

[3] There are Annotations in American Law Reports on various phases of such situations. See 36 A.L.R. 1148; 68 A.L.R. 1013; 100 A.L.R. 923, 168 A.L.R. 1375; 120 A.L.R. 1311; 112 A.L.R. 1020; and 20 A.L.R. 2d 1210.

resided. We come then to the general reputation of Livingston as being a drunken driver.[4]

Rook and Livingston both lived in or near Pine Bluff in Jefferson County, Arkansas; both worked for the Cotton Belt Railroad; and belonged to the same Union. Obviously, the evidence as to Livingston's general reputation of being a drunken driver should have been directed to, and confined to, his general reputation in that regard in Pine Bluff and Jefferson County, because that is where he and Rook lived and resided; and Rook is the person sought to be charged with such general reputation. There were two witnesses who undertook to testify as to the general reputation of Livingston as being a drunken driver *in Dallas County, Arkansas, and in South Arkansas,* as distinguished from the general reputation of Livingston in Pine Bluff and Jefferson County, Arkansas. One of these witnesses was Kenneth Rogers, a member of the State Highway Patrol stationed in Fordyce, Arkansas. Over the objection of Rook's attorney, Rogers was permitted to state that the reputation of Livingston in *South Arkansas* was that of a drunken driver. The other witness was Clary Atkinson, Sheriff of Dallas County, who was permitted, over the objection of Rook, to make like answer.

The Court was in error in allowing this testimony of general reputation to be presented to the jury. The question was what was Livingston's general reputation as being a drunken driver *in Pine Bluff and Jefferson County.* That is where Rook resided, and that is the only location to which the question should have been addressed regarding Livingston's general reputation as being a drunken driver. The Court committed reversible error in allowing the testimony of Kenneth Rogers and Clary Atkinson in the particulars herein detailed; and because

---

[4] Of course, the correct terminology is the general reputation of Livingston "as being a person who drove a car while he was intoxicated," but for brevity we use the expression "drunken driver" to mean the same as the language just quoted.

of such error the judgment must be reversed and the cause remanded for a new trial.[5]

III. Other Errors. We need not call attention to other errors, as they may not occur again; but there is one matter of instructions that should be called to the attention of the parties in the event of a new trial. Plaintiffs' Instruction No. 6 read:

"You are instructed that if anyone permits another to drive his car, knowing that such person is in the habit of becoming intoxicated and driving a car in this condition, or, by the exercise of ordinary care should have known that such person is in the habit of becoming intoxicated and driving a car in this condition, the owner of the automobile is liable for any injury caused by the negligence of such driver."

Of course, the instruction should also have concluded with these words: *"that may have resulted from drunken driving."* The italicized language should be added to the instruction.

For the admission of the incompetent evidence relating to the general reputation, the judgments of Mrs. Moseley and Mrs. Milner against C. C. Rook are reversed, and their causes of action against C. C. Rook are remanded for a new trial on all issues; but the judgments of Mrs. Moseley and Mrs. Milner against R. T. Livingston have been settled by the original verdict and judgment, since Livingston is not a party to this appeal. See *Calloway* v. *Cherry*, 229 Ark. 297, 314 S. W. 2d 506.

---

[5] There was one witness, Bill Gober, Chief of Police of Fordyce (whose testimony seems to have been admitted without objection) as to Livingston's general reputation in Pine Bluff and Jefferson County. If objection had been made to this testimony it might have been excluded as hearsay or subsequently acquired; but since there was such testimony, we think the cause should be remanded for a new trial.