CHARLES L. RAY *v.* LEE MAYS

5-4152                                    411 S. W. 2d 865

Opinion delivered March 6, 1967

*Cockrill, Laser, McGehee, Sharp & Boswell,* for appellant.

*Jack Sims* and *Don Ryan,* for appellee.

LYLE BROWN, Justice. The only question on appeal is whether the defendant-appellant, Charles L. Ray, is liable for entrusting a vehicle to a driver whose negligence caused injuries to plaintiff-appellee, Lee Mays.

The jury awarded Lee Mays damages on the theory of negligent entrustment, and Charles L. Ray appeals.

The collision which caused injuries to Lee Mays occurred on October 3, 1964. Mays was struck by a truck being operated by Percy Lee Sebren, the truck having been entrusted to Sebren by appellant, Ray. For approximately three months prior to early September 1964, Percy Lee Sebren and Charles L. Ray were engaged on the same work project. They were hauling road construction materials, working out of a quarry in the area of Sweet Home. Approximately one month before the accident in which Lee Mays was injured, Charles L. Ray left this job and returned to his home in Harrisburg. Before Ray left, the two men—Sebren and Ray—consummated some type of arrangement whereby Sebren obtained from Ray the truck Sebren was driving when he struck Lee Mays.

Evidence introduced on behalf of the injured party, Lee Mays, was pointed toward his theory that the driver, Sebren, was in the habit of becoming intoxicated and driving a car in this condition, and that Ray, the owner of the truck, knew or should have known of this habit. Sebren was intoxicated at the time Mays was injured.

At the close of all the testimony appellant Ray unsuccessfully moved for a directed verdict, alleging that evidence introduced was insufficient to cause the doctrine of negligent entrustment to be invoked.

We permit proof of the habit of driving while intoxicated to be established by specific acts or by general reputation in the community where the driver resides. *Rook* v. *Moseley,* 236 Ark. 290, 365 S. W. 2d 718 (1963).

Plaintiff sought to prove by three witnesses that Sebren had a general reputation in the city of his residence for driving while intoxicated. We agree with appellant that the evidence on this point was insufficient.

In fact, we gather that the trial court was of the same opinion. So we turn to a careful examination of the evidence to determine whether plaintiff made a jury question grounded on specific acts of drunken driving, of which the defendant Ray had knowledge, actual or constructive.

Joe Elmer Johnson was truck foreman on what we will call the Sweet Home haul. He directed the truckers where and what to haul and did the hiring and firing. Haulers Sebren and Ray worked under Johnson. It was witness Johnson's information that Sebren's wife had at times ridden with Sebren to keep him on the job and out of taverns. On occasions he could smell alcohol on Sebren's breath. Johnson testified that on the day of the accident, Sebren was so intoxicated that he was in no condition to drive.

Plaintiff introduced the discovery deposition of the defendant, Ray. He testified that he would ''guess'' Sebren to be a chronic drinker. When pressed for a reason, his reply was that it was because of Sebren's actions and ''the way people talked on the job.''

"Q. Did the talk go around to the effect that he does drink quite a bit?

"A. Well, yes.

"Q. Is that talk to the effect he drinks and drives?

"A. Well, some of them say he was drinking. Yes. He would come up to the quarry and sit there, you know, through the night, and [you could] see a couple of six-pack beer cans.

"Q. In other words different ones mentioned he does drink while he works. Is that it?

"A. Yes, sir.''

At another point in his deposition, Ray made a significant statement about his source of knowledge regarding

Sebren's drinking and driving habits. "He [Sebren] was on the road. This is one thing we do—if a guy acts funny among us truckers we pass the word along, and then you know to watch the truck." The jury could very well have interpreted this statement to mean that the word had been passed to the truckers that Sebren was driving while drinking to such an extent that the other truckers were watching out for him. It should be remembered that this witness is the defendant, Charles L. Ray.

On cross-examination, Ray stated that his information about Sebren's drinking and driving came to Ray *after* the collision. On the other hand the jury could well have concluded that Ray's information came to him *before* the collision. This is because Ray testified he left the Sweet Home job some thirty days before the accident and returned to work in his home town of Harrisburg. Also, some of Ray's other testimony herein recited does not comport with the contention of after-acquired knowledge.

On the question of the known drinking habits of Sebren, Mrs. Charles Ray was called as a witness for the defendant. She lived at a trailer court with her husband near Pine Bluff during the months when Mr. Ray was hauling from the quarry. She testified she neither saw nor heard anything with reference to Sebren being a drinking man. The defendant took the stand and was questioned regarding his knowledge of the drinking and driving habits of Sebren. We are justified in saying that his testimony was inconsistent with the statements introduced by plaintiff from Ray's discovery deposition. In another respect, some of his testimony was damaging to his own contention. For example, he testified on cross-examination that he heard other drivers talk about Sebren's drinking on the job. He further testified that everything he saw and heard with respect to Sebren's drinking, in point of time, was *before* he left the job and returned to Harrisburg. Suffice it to say that there was sufficient evidence to submit to the jury the question

whether Ray knew of Sebren's drinking and driving habits at the time he made the truck available to him. Furthermore, had this information come to Ray's knowledge after Ray placed Sebren in possession of the truck and prior to the accident, it would have then become Ray's duty to exercise a reasonable effort to void the possessive arrangement with Ray.

Affirmed.