**HERLIHY MID–CONTINENT COMPANY, Plaintiff and Appellee,**

v.

**BAY CITY, a Municipal Corporation, Defendant and Appellant.**

No. 14364.

United States Court of Appeals
Sixth Circuit.

July 25, 1961.

George M. Tunison, Saginaw, Mich. (Heilman & Purcell, Saginaw, Mich., Anthony F. Bielawski, Bay City, Mich., on the brief), for plaintiff-appellee.

John X. Theiler, Bay City, Mich. (Smith, Brooker & Harvey, Bay City, Mich., on the brief), for defendant-appellant.

Before MILLER, Chief Judge, and CECIL and O'SULLIVAN, Circuit Judges.

CECIL, Circuit Judge.

This is an appeal by the defendant-appellant from a judgment in favor of the plaintiff-appellee, in the District Court for the Eastern District of Michigan, Northern Division.

The parties will be referred to as plaintiff and defendant, as they were in the District Court. The plaintiff, Herlihy Mid-Continent Company, is a corporation organized under the laws of the State of Illinois, engaged in the general contracting and construction business. The defendant, Bay City, is a municipal corporation organized and existing under the laws of the State of Michigan and located in Bay County, Michigan. Jurisdiction is invoked by reason of diversity of citizenship and the amount in controversy being in excess of $10,000, exclusive of interest and costs.

At the time the plaintiff's alleged cause of action arose, it was engaged in constructing a bridge, known as "Veterans Memorial Bridge," across the Saginaw river in the defendant city. At the same time, Bay City was operating a system for the sale and distribution of water to the general public, to be used for domestic, construction, industrial and other purposes.

It is alleged in the complaint that prior to January 16, 1957, the defendant entered into an agreement to furnish the plaintiff water for its construction uses and pursuant to the agreement, at the time the cause of action arose, was supplying water to the plaintiff for the operation of its engines, machines and equipment during the construction of the Veterans Memorial Bridge.

It is further alleged, "That during the evening or night of January 16, 1957, the said defendant wrongfully, negligently and unlawfully and contrary to and in violation of its aforesaid agreement" shut off the water and discontinued furnishing the plaintiff with water for its construction purposes; that in consequence of the defendant's negligent acts, the plaintiff's pipe-line froze and resulted in damage to the plaintiff in excess of $10,000; that the water was being used as a priming water in the operation of an automatic, electrical, centrifugal pump, which was then being operated to drain a cofferdam; and that the damages of which the plaintiff complains resulted as a natural sequence of the freezing in the pipe-line, which stopped the operation of the pump.

The defendant, in its answer denied specifically the material allegations of the complaint and alleged eight separate and distinct affirmative defenses, among which was a claim that the water was shut off by employees of the city, who were in the performance of a governmental function of the city. It further alleged that the plaintiff was a trespasser and that it first learned of the plaintiff's use of the water on January 13, 1957; and that upon learning of the use, it billed the plaintiff for the cost of the service.

The issues were tried to a jury and a verdict was returned in favor of the plaintiff. Judgment was entered upon the verdict in the sum of $9,500 and costs, an amount that was agreed upon by counsel in the event the jury found for the plaintiff.

The pertinent facts, which are not in dispute or upon which there is creditable evidence, may be briefly stated as follows:

The plaintiff was working on the west side of the river, at the time in question. The testimony is in conflict as to what arrangements were made for turning the water on, on this side of the river, for the use of the plaintiff. It was turned on, on March 1, 1956, at a valve which controlled a hydrant, commonly called a fire plug, at the edge of Veterans Memorial Park. The application was taken on behalf of the city by one Rasmussen. The plaintiff was billed for water on the basis of the excess over what the park used the previous year. In the fall of 1956, the city shut the water off to prevent the hydrant from freezing and did not turn it on again until Mr. Gerace, on behalf of the plaintiff, gave the city

a letter accepting responsibility for protecting the hydrant.

The park was located in the city but was jointly owned by the city and the county. It was operated by a board appointed by both governmental units. The water plug or hydrant had two openings which were capped when not in use. The water was turned on by use of a wrench applied to a large nut at the top of the plug. This operated a valve underground where the water pipe was connected to the hydrant.

The plaintiff through a reducing medium attached a two-inch iron pipe to one of the openings, which pipe ran over the top of the ground for six or seven hundred feet to the construction. At the end, it was reduced to a three-quarter inch hose which was connected to the automatic pump heretofore mentioned.

On the night of January 16th, between the hours of ten p. m. and two a. m., Paul C. Lee, foreman of the city's recreation department, with a crew of four men, went to the hydrant in question for the purpose of flooding an ice-skating rink in the park. They turned off the water, attached hose to the other opening, turned the water on and flooded the rink for thirty or forty minutes. The water was then turned off again, the hose disconnected, the cap replaced and the water turned on. It is claimed that the water was not shut off over three minutes.

Mr. Lee and his men knew that the water from the hydrant ran over to the bridge project, but none of them knew that it was being used to prime a pump or that a continuous flow was necessary.

The following morning it was found that the plaintiff's water line was frozen solid and split in many places. It was claimed that when the flow of priming water to the pump was stopped, the pump ceased to function and the motor burned out because the switch was on and the pump could not turn. The cofferdam filled up and caused the plaintiff's damages.

On this appeal, counsel for the defendant objects to the complaint on the ground that it sounds in both contract and tort. This objection is not valid, as two or more statements of a claim may be pleaded alternatively. Rule 8, F.R.Civ.P., 28 U.S.C.A.

The district judge tried the case on the theory of negligence. He said in his instructions, "I have not, and I do not intend to instruct this jury that this savors of both contract and tort." As we interpret the complaint, it states a single cause of action in tort, arising out of breach of contract.

In Hart v. Ludwig, 347 Mich. 559, 79 N.W.2d 895, the court discussed the question of whether a cause of action for breach of contract could be laid in tort as well as contract.

At page 562, 79 N.W.2d at page 896, the court quoted the rule as stated in Elsee v. Gatward (1793), 5 Dumford & East's, 143, 150 (101 Eng. Rep. 82, 86) as follows: " 'The distinction is this: If a party undertake to perform work, and proceed on the employment, he makes himself liable for any misfeasance in the course of that work; but if he undertake, and do not proceed on the work, no (tort) action will lie against him for the nonfeasance.' "

At page 564, 79 N.W.2d at page 898, the court said: "Thus we are cited to 38 Am.Jur., Negligence, section 17, p. 659, reading as follows: 'The law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which * * * an action lies.' The principle stated is correct. But it has reference to cases in which the defendant, having assumed to act, does so negligently." (In the Hart case, the breach was nonfeasance or failure to perform.) Justice (then Judge) Cardozo said: "A time-honored formula often phrases the distinction as one between misfeasance and non-feasance." H. R. Moch Co., Inc. v. Rensselaer Water Co., 247 N.Y. 160, 167, 159 N.E. 896, 898, 62 A.L.R. 1199.

In Atlantic and Pacific R. R. v. Laird, 164 U.S. 393, at page 399, 17 S.Ct. 120, 41 L.Ed. 485, the Supreme Court adopted the same distinction quoting from Kelly v. Metropolitan Railway Company (1895), 1 Q.B. 944, 947. See also, Chase v. Clinton County, 241 Mich. 478, 217 N. W. 565.

■ In the case at bar, the plaintiff charged the defendant with misfeasance, that is, negligence in the performance of a contract. For misfeasance the action might have been brought either ex delicto or ex contractu, or they might have been pleaded alternatively. We are of the opinion that the action sounds solely in tort and that no action for breach of contract is alternatively pleaded. The district judge was therefore correct in trying the case as a negligence case.

■ The defendant claims that its employees, who turned the water off, in flooding the skating rink were in the performance of a governmental function, and by reason thereof, the city was not liable for any act of negligence committed by them. On the other hand, the plaintiff claims that turning the water off was in the exercise of a proprietary function. It is conceded by both parties that the operation of a park by a city for recreational purposes is a governmental function. It has been so held in Heino v. City of Grand Rapids, 202 Mich. 363, 168 N. W. 512, L.R.A.1918F, 528; Royston v. City of Charlotte, 278 Mich. 255, 270 N. W. 288. Both parties also concede that the operation by a city of a system for the sale and distribution of water for general domestic, construction and industrial uses is a proprietary function. In support of this concession see, Taber v. City of Benton Harbor, 280 Mich. 522, 274 N.W. 324.

This being a diversity of citizenship case, the substantive law of Michigan controls. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

The doctrine of sovereign immunity from the negligence of employees, in the performance of governmental functions, is recognized and applied in the state of Michigan, as is evidenced by a long line of authorities. See Penix v. City of St. Johns, 354 Mich 259, 92 N.W.2d 332; Royston v. City of Charlotte, supra; Richards v. Birmingham School District, 348 Mich. 490, 83 N.W.2d 643; Harrison v. City of Pontiac, 6 Cir., 285 F.2d 305.

It is likewise true that when engaged in a proprietary function, a city has the same liability and may be sued in the same manner for injuries, as private persons or a business corporation. Borski v. City of Wakefield, 239 Mich. 656, 215 N.W. 19.

The trial judge instructed the jury that, under the facts and circumstances of this case, the city was not performing a governmental function and was not entitled to any immunity from the negligence of its employees. The judge explained why it was not a governmental function. He said that when the city employees turned the water off and attached the hose to the hydrant, they were only preparing to perform a governmental function. Up to this time it has to do with shutting off the water and that is a proprietary function.

We cannot follow this reasoning. The defendant city had some twelve or thirteen skating rinks of the type of this one in Veterans Memorial Park. Mr. Lee and his crew were nightly engaged, when the temperature was low enough, in flooding these rinks. In doing this, they were performing a governmental function. When Mr. Lee and his men went to the park on the night in question, they went with the single purpose of flooding the skating rink. What they did was one act, although several steps were required in accomplishing the ultimate purpose. We do not believe that the act of turning off the water can be isolated from the act and purpose of flooding the skating rink. The plaintiff charges that the city employees were negligent in turning off the water. The undisputed facts show how and for what purpose the water was turned off. The plaintiff cannot escape or deny the cause. It was clearly for the purpose of flooding the skating rink for

the recreation of citizens of Bay City. As is shown by the evidence, no charge was made for the use of the rink. There is no evidence that the employees were negligent in performing the job which they set out to do.

The basic facts concerning this question not being in dispute, whether governmental or proprietary function was involved, constituted a question of law for the court to determine.

We hold, therefore, that the city employees, on the night of January 16, 1957, were in the performance of a governmental function and that the city was not liable for their negligence.

The cases cited by counsel for the plaintiff are not helpful in determining the precise question involving governmental immunity that is presented here.

In Lyshak v. City of Detroit, 351 Mich. 230, 88 N.W.2d 596, governmental immunity was not discussed. The city, a possessor of land, a golf course in this instance, was held liable to an infant trespasser, modifying a former rule of law in Michigan.

Marks v. City of Battle Creek, 358 Mich. 114, 99 N.W.2d 587, was decided on the theory that the operation of an airport was a proprietary function. Being such, it could be sued as other private enterprises and could not require a notice before suit was brought.

In Bathke v. Traverse City, 308 Mich. 1, 13 N.W.2d 184, a municipal light employee, driving a truck, admittedly on proprietary business collided with plaintiff. It was claimed that that was the fault of the city garage which was charged with maintenance of the truck. It was further claimed that operating the garage was a governmental function. The city could not escape responsibility for what happened while the truck was being driven in the operation of a proprietary function.

In Swanson v. City of Marquette, 357 Mich. 424, 98 N.W.2d 574, the court reversed an order of the trial court dismissing the declaration of the plaintiff. In finding that the declaration stated a cause of action, the court followed Lyshak v. City of Detroit and Borski v. City of Wakefield, both above cited.

It was held in Hodgins v. Bay City, 156 Mich. 687, 121 N.W. 274, that where a city furnishes electricity both for commercial use and for its own street lighting, it is liable for negligence in the operation of the first and is entitled to governmental immunity in the operation of the latter. Here the decedent's death was clearly caused through the operation of the commercial system.

City of Houston v. Wolverton, Tex.Civ. App., 270 S.W.2d 705, is not a Michigan case, but is cited as being particularly applicable to the case at bar. Here a city milk inspector, driving a city-owned automobile, collided with the plaintiff. At the time of the accident, he was driving the car to the city garage for maintenance work. It was held that while he was performing his work as a milk inspector, he was acting in a governmental function, but that the garage being a proprietary function, driving there for maintenance was in the performance of that function and the city was liable for his negligence.

Counsel for plaintiff say, "Plaintiff was entitled to go to the jury upon its claim of tort liability for negligence in a proprietary function, negligent breach of contract, and on direct trespass to its private rights." Appellee's brief, p. 18.

We fail to see a distinction between the first two. Negligence sounds in tort. As we said above, in our discussion of the nature of the cause of action in plaintiff's complaint, it could ground its action in tort, if it charged a breach by misfeasance. Such a charge was made and the action was properly brought.

The plaintiff might have alleged alternately a claim for breach of contract, but as previously stated, no such claim was made in the complaint. The gravamen of the plaintiff's case is that it had to have a continuous flow of water at this particular time in its operations. This was necessary to keep the pump primed, for the reason that the failure of the pump to function would cause the coffer-

dam to be flooded, to the serious injury of the plaintiff. The plaintiff did not allege in its complaint that it contracted for a continuous flow of water, or that the officials and agents of the city knew that it required such a continuous flow. By a continuous flow the plaintiff means not even an interruption for as long as approximately three minutes.

The plaintiff made a great effort to prove this knowledge on the part of the city. There was conflicting evidence on this question and the trial judge submitted it to the jury. That was virtually the only question he gave to the jury and he said in effect, "If you find that the defendant through its agents and employees knew that the plaintiff had to have a continuous flow of water, and knowing it turned it off, that would be a wrongful act and the defendant would be liable." It was proper to attempt to prove this under the charge of negligence and, if there was conflicting evidence on it, to submit it to the jury.

This brings us back to the question of negligence. Negligence of whom? If there was any negligence, it was the negligence of the city employees who turned off the water and they were engaged in the governmental function of flooding the skating rink for recreational purposes.

The plaintiff's action must rest upon an action in tort. It was pleaded and tried as such. The trial judge gave no instructions on the law of an action ex contractu. For these reasons, we do not discuss the appeal on the basis of a contract action. It is doubtful that the evidence would support such an action, particularly in view of section 44–31 of the city ordinances. "All parties using water from the water works of the city, for any purpose whatsoever will do so at their own risk and the city or employees thereof shall not be liable for any damages occasioned by, or growing out of the stoppage of the water, or an insufficient supply of same, or for accidents or damage of any kind caused by or growing out of the use or failure of such water." Sec. 44–31, ordinances of Bay City.

The ordinances of the city, pertaining to furnishing and supplying water, would be a part of any contract between the city and a customer for the use of water from the city. Brady v. North Western Ins. Co., 11 Mich. 425.

There is no merit to plaintiff's claim that it had a right to go to the jury on trespass to its private rights. The cases cited by counsel, except one, involve trespass by a governmental unit on land of another. In Alberts v. City of Muskegon, 146 Mich. 210, 109 N.W. 262, 6 L.R.A.,N.S., 1094, it was held that the act complained of was not trespass but was a charge of negligence against employees of the city performing a governmental function. The city was not liable. There was no trespass to lands in the case at bar.

That there may be a trespass to private rights is beyond question. However, no such case has been cited to us nor have we been able to find one in point. It would seem that all acts of trespass would constitute negligence, but all negligent acts cannot be characterized as trespass.

Trespass in general is defined in 87 C.J.S., § 4, p. 958 as follows: "The gist of trespass is the doing of an unlawful act or of a lawful act in an unlawful manner to the injury of another's person or property. A cause of action for trespass does not arise from mere omission to perform a duty; there must be some affirmative act by violence or force, direct or imputed, and the injury must be immediate and not consequential."

On the next page, under the heading "Direct or consequential injury," it is stated, "It is immediate only when it is directly occasioned by, and is not merely a consequence resulting from, the acts complained of."

The facts here as pleaded and as shown by the evidence would not rise to the level of trespass.

The judgment of the District Court is reversed and the case remanded to that court with instructions to enter judgment for the defendant.