**Bobby BREEDING and Hugh Breeding, Inc., Appellants,**

v.

**Ben MASSEY and Mrs. Ben Massey, Appellees.**

No. 18475.

United States Court of Appeals
Eighth Circuit.

June 5, 1967.

Rehearing Denied June 29, 1967.

ages sustained arising as a result of a collision occurring about 10:45 p. m. on May 17, 1963, on Highway 67 at its intersection with State Highway 36, near Searcy, Arkansas, between a tractor-trailer unit operated by Ben Massey traveling south on Highway 67 and a tractor owned by the defendant Hugh Breeding, Inc., and operated by the defendant Bobby Breeding which was proceeding in a northerly direction and was turning left off Highway 67 onto Highway 36.

Liability of the driver Bobby Breeding is predicated upon his negligent operation of the tractor and liability of Hugh Breeding, Inc., is based upon such negligent operation within the scope of employment and upon the additional basis of negligent entrustment of the vehicle to an incompetent driver. Punitive damages are claimed only on the negligent entrustment claim and only as against Hugh Breeding, Inc.

It is undisputed that Ben Massey suffered severe personal injuries as a result of the collision. No claim is made upon this appeal that the damages awarded are excessive and evidence as to extent and nature of the injuries does not appear in the record. Mrs. Massey's claim is based on loss of consortium.

This action was commenced in the state court and removed to the federal court. Jurisdiction, based upon diversity of citizenship and the requisite amount is established.

The case was tried to a jury and submitted upon interrogatories which, together with the jury's answers thereto, read:

"1. Do you find from a preponderance of the evidence that defendant Bobby Breeding was guilty of negligence in one or more of the particulars alleged and that such negligence on his part was a proximate cause of the collision?

Answer: Yes.

(Yes or No)

"2. Do you find from a preponderance of the evidence that plaintiff Ben

Alston Jennings, Little Rock, Ark., for appellants.

Robert V. Light, Little Rock, Ark., for appellees. Kenneth J. Will, Houston, Tex., Cecil A. Tedder, Jr., Comer Boyett, Jr., Searcy, Ark., and G. Ross Smith, Little Rock, Ark., with him on the brief.

Before VAN OOSTERHOUT, GIBSON and HEANEY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This action by Ben Massey and Mrs. Ben Massey is for the recovery of dam-

Massey was guilty of negligence in one or more of the particulars alleged and that such negligence on his part was a proximate cause of the collision?

Answer: No.

(Yes or No)

"3. (This interrogatory related to the percentage of negligence of the respective parties and was to be answered only if plaintiffs were guilty of contributory negligence. The interrogatory was not answered.)

"4. Do you find from a preponderance of the evidence that Bobby Breeding was acting in the course and scope of his employment by Hugh Breeding, Inc., at the time of the collision?

Answer: Yes.

(Yes or No)

"5. Do you find from a preponderance of the evidence that Hugh Breeding, Inc., had negligently entrusted the vehicle involved to Bobby Breeding at the time of the collision and that such negligent entrustment was a proximate cause of the collision?

Answer: Yes.

(Yes or No)

"6. What do you find from a preponderance of the evidence to be the actual or compensatory damages suffered as a proximate result of the collision by the respective plaintiffs?

Answer: Ben Massey . . $115,000
Mrs. Ben Massey $ 25,000

"7. Do you find from a preponderance of the evidence that Hugh Breeding, Inc. was guilty of wilful and wanton misconduct in entrusting the vehicle involved to Bobby Breeding?

Answer: Yes.

(Yes or No)

"8. If your answer to Interrogatory No. 7 was 'Yes', do you award punitive damages to the plaintiffs against defendant Hugh Breeding, Inc.?

Answer: Yes.

(Yes or No)

If your answer is 'Yes', in what amount?

Answer:

Ben Massey . . . . . $25,000.00
Mrs. Ben Massey . . $10,000.00"

The answer to each interrogatory was signed by the jury foreman.

Pursuant to the interrogatory answers, judgment was entered against both defendants for actual damages in favor of Ben Massey for $115,000 and Mrs. Ben Massey for $25,000, and in addition punitive damages were awarded against Hugh Breeding, Inc., in favor of Ben Massey for $25,000 and Mrs. Ben Massey for $10,000. Motions for judgment n. o. v. and new trial were made and overruled. This timely appeal followed.

The points relied upon for a reversal are thus stated by appellants (appellants will in this opinion usually be referred to as defendants):

"I. The motion of Hugh Breeding, Inc., for a directed verdict should have been granted.

"II. The jury should have been instructed as a matter of law that Bobby Breeding was not in the course and scope of his employment by Hugh Breeding, Inc., at the time of the occurrence complained of.

"III. The Court should have instructed the jury as a matter of law that Hugh Breeding, Inc., did not negligently entrust the vehicle to Bobby Breeding at the time of the occurrence complained of.

"IV. The Court erred in submitting to the jury the issue of punitive damages and in permitting testimony as to the net worth of Hugh Breeding, Inc.

"V. The Court erred in permitting the introduction of testimony concerning arrests, convictions and pleas of guilty of Bobby Breeding on occasions prior to May 17, 1963."

Hugh Breeding, Inc., made timely motions for directed verdict, for judgment n. o. v. and to withdraw issues II and III hereinabove stated from the jury, and the defendants have preserved for

review the errors hereinabove stated upon which they rely for reversal.

Before reaching the legal issues, we will summarize the material facts. Bobby Breeding is the grandson of Hugh Breeding, president and principal shareholder of the Company, and the nephew of Cecil and Lyle Breeding, vice-presidents of the Company. When first hired by the Company, at age eighteen, in 1949 or 1950, he worked during summer vacations greasing and washing, and changing tires. He subsequently spent eight years in the Army and Navy. On July 20, 1960, after his discharge, he was rehired by the Company. Initially, he worked part-time after school on jobs similar to those he had done during summer vacations in 1949–1950; however, after about four months, he quit school and asked to drive a truck for the Company. He was hired by the Company as a driver after he had undergone a month's training as a student driver, during which he made several trips with experienced drivers without pay.

The Company never required Bobby Breeding to submit the personal history form usually required of driver applicants. He continued as a Company driver until the accident, May 17, 1963. He had no accidents or arrests while driving Company vehicles during this period.

Bobby Breeding was in three accidents with his own automobile which involved drinking and driving between 1955 and the date of his reemployment. These occurred in Noel, Missouri, in 1955; between Anderson and Langley, Missouri, in 1958; and in Okmulgee, Oklahoma, April 1, 1960 (minor accident). He was also involved in a drinking and driving incident in Okmulgee, Oklahoma on May 4, 1960 (no accident). Hugh Breeding knew about the 1955 and 1958 accidents, and Cecil Breeding knew about the others.

Bobby Breeding was involved in another accident with his own automobile near Tulsa, Oklahoma, in 1962. The Company safety manager and dispatcher were in-formed about this accident. These five incidents were the only evidence introduced to show Bobby Breeding's addiction to the use of intoxicating liquors or to establish his habit of driving while intoxicated. There is no evidence to establish that Bobby Breeding was intoxicated at any prior time while operating the corporate defendant's vehicles.

A few days prior to the accident involved in the present case, Bobby Breeding, with a relief driver, picked up a load of missile fuel at Denver, Colorado, dropped the truck-trailer for unloading at a missile site near Searcy, Arkansas, and drove the truck-tractor to a Searcy motel.

The Company provided the Searcy motel quarters at its own expense. In addition to the accommodations, the Company also paid Bobby Breeding $24.00 a day, during the layover while he was awaiting unloading of the truck-trailer. He was on Company call twenty-four hours a day.

Although the Company had made some arrangements for the drivers to eat at the motel, Bobby Breeding ate there only once or twice, because he considered the food poor and the prices high. (The drivers paid for their own meals.) He and the other driver used the truck-tractor to go out on the highway and eat and "this sort of thing" during the three-day layover prior to the accident.

About 6:00 p. m. on the night of the collision, Bobby Breeding took his relief driver to the Searcy bus station, using the truck-tractor, per telephone instructions from the Company's main terminal at Tulsa, Oklahoma. Thereafter, he drove the truck-tractor to a truck stop on Highway 67 intending to eat. On the way, he stopped and purchased a pint of whiskey. This bottle was found half empty immediately after the accident. At the truck stop, he had two drinks of whiskey but did not eat. He washed the truck windshield and kicked the truck tires. The accident occurred on the return trip from the truck stop to the motel.

At the trial, Company witnesses asserted that Bobby Breeding violated a Company rule against using the truck-tractor for anything other than Company business. They stated that he had been instructed to park the truck and not use it until it was necessary to pull the trailer. Bobby Breeding stated he knew about the rule. However, the rule was not contained in an otherwise detailed Company rule book or its driver's manual, and cross-examination of appellants' witnesses indicated uncertainty as to its existence and application.

There is no purpose in summarizing the facts relating to the collision as the sufficiency of the evidence to establish that Bobby Breeding was guilty of negligence is not challenged.

## I.

■ The trial court properly overruled the motions of Hugh Breeding, Inc., for a directed verdict and judgment n. o. v. In determining the sufficiency of the evidence to support a verdict, the established rule is that the evidence, including all reasonable inferences to be drawn therefrom, must be viewed in the light most favorable to the prevailing party. Dun & Bradstreet, Inc. v. Nicklaus, 8 Cir., 340 F.2d 882, 885; Hanson v. Ford Motor Co., 8 Cir., 278 F.2d 586, 590.

■■ The motions would be entitled to be sustained only if there is no substantial evidence to support any ground for recovery. Liability is predicated upon two theories, to wit, negligence of Bobby Breeding within the scope of his employment by Hugh Breeding, Inc., and negligent entrustment. Our examination of the record satifies us that substantial evidentiary support exists for the submission to the jury of both bases for recovery. Our reasons therefor are more particularly set out at points II and III hereinafter.

■ We note that Bobby Breeding made no motion for directed verdict. The evidence likewise clearly shows a fact issue exists with respect to his liability.

## II.

■ Hugh Breeding, Inc., excepted to an instruction given which submitted to the jury the issue of whether Bobby Breeding was acting within the scope of his employment at the time of the accident and to the court's refusal to instruct as a matter of law that Bobby Breeding was not then acting within the scope of his employment. The court committed no error in its rulings.

■ Arkansas has adopted the rule that when it is indisputably shown that at the time of a collision, an employee is driving a vehicle owned by an employer, an inference or presumption of fact arises that the employee was acting within the scope of his employment and in furtherance of his master's business. Curtis Circulation Co. v. Henderson, 232 Ark. 1029, 342 S.W.2d 89; Mullins v. Ritchie Grocer Co., 183 Ark. 218, 35 S.W. 2d 1010, 1012.

In Curtis, the court held that the presumption had not, as a matter of law, been rebutted, although both an employee and a passenger in the employer's automobile testified that the driver was not on the employer's business at the time of the accident.

■ While the presumption applied in Curtis may be overcome by evidence to the contrary, the evidence here does not compel such a result. Fuqua v. Deapo, D.C., 34 F.R.D. 111; Capital Transp. Co. v. Armour & Co., 8 Cir., 200 F.2d 722; Ford & Son Sanitary Co. v. Ransom, 213 Ark. 390, 210 S.W.2d 508, 509; 9 Wigmore, Evidence § 2491 (3d ed.). It is undisputable that Bobby Breeding was (1) several hundred miles from the main Company terminal at Tulsa, Oklahoma, (2) entirely alone and in charge of the truck-tractor, (3) provided with money to purchase his food, (4) on call by the Company twenty-four hours a day, and (5) receiving pay during the layover.

■ In addition to the above, there was obvious disagreement or misunderstanding over the extent of Bobby Breeding's authority to use the truck. Lyle

Breeding, Company vice-president, stated that the Company rules or policy authorized Bobby Breeding to use the tractor to get from the point he left the trailer to his lodging facilities. He was then to park the truck and not use it until he went to connect the trailer. However, the rule could not be found either in the booklet entitled, "Procedure for Transportation and Handling of Missile Fuels," or in a detailed thirty-two page publication called "Hugh Breeding, Inc., Driver's Manual." As both Breedings are interested parties, the jury was not bound to accept their testimony. Curtis Circulation Co. v. Henderson, supra; Cousins v. Cooper, 232 Ark. 605, 339 S.W.2d 316; Conway v. Hudspeth, 229 Ark. 735, 318 S.W.2d 137, 139.

Even if the existence of a Company rule is assumed, there was evidence from which the jury could have found that Bobby Breeding had authority to use the truck to obtain meals or to service the truck. While denying that Bobby Breeding had any authority to use the truck on the night of the accident, Lyle Breeding, on cross-examination, admitted that a driver could use a truck to obtain food depending on the availability of the places to eat in a particular locality. Bobby Breeding stated in a deposition that it was permissible to take the truck down and get it serviced.

Moreover, it is not disputed that Bobby Breeding had instructions from his employer to drive his relief driver to the bus station. The record does not disclose whether Bobby Breeding drove directly from the bus station to the truck stop or whether the truck stop was on a direct route from the bus station to the motel, or if it was not, the extent of the deviation. Thus the evidence of deviation under all the circumstances disclosed by the record is not such as to compel a determination as a matter of law that the trip as a whole was a deviation from the scope of employment. See Healey v. Cockrill, 133 Ark. 327, 202 S.W. 229, L.R.A.1918D, 115, Prosser, Torts § 63 (2d ed. 1955); Restatement 2d, Agency §§ 228–237.

## III.

■ The court properly instructed the jury on the issue of negligent entrustment. Its refusal to instruct the jury, as a matter of law, that the Company did not negligently entrust the vehicle to Bobby Breeding was not error, and the court properly denied the appellants' motion for a directed verdict on this issue. See Rook v. Moseley, 236 Ark. 290, 365 S.W.2d 718; Arkansas-Louisiana Lbr. Co. v. Causey, 228 Ark. 1130, 312 S.W.2d 909; Chaney v. Duncan, 194 Ark. 1076, 110 S.W.2d 21; Annot., 168 A.L.R. 1364 (1947); Annot., 100 A.L.R. 920 (1936); Restatement 2d, Torts § 390 (1966).

While there was little evidence to indicate that Bobby Breeding was addicted to the use of intoxicating liquor, there was substantial evidence to indicate that he had driven his personal vehicle several times while under its influence, and that he was accident prone on such occasions. There was also substantial evidence to indicate that officials of the Company were aware of the above.

## III (A).

■ Hugh Breeding, Inc., in support of point III presents the further argument that the theories of respondeat superior and negligent entrustment are alternative grounds for liability and that recovery for negligent entrustment can be made only when respondeat superior liability does not exist, and hence when the jury found for plaintiffs on the scope of employment issue, consideration of the negligent entrustment theory was foreclosed. This contention is based on the proposition that the two theories of recovery are mutually exclusive and that it was error to submit both issues. Such position is not supported either by authority or logic. Rule 8(e), Fed.R.Civ. P., expressly provides: "A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. * * * A party may also state as many separate claims or defenses as he has regardless of consistency and whether

178

based on legal, equitable, or maritime grounds." Rule 8(a) provides, "Relief in the alternative or of several different types may be demanded." See also, Rule 18(a).

■ The right of a plaintiff to try his case on alternate theories has uniformly been upheld in the federal courts and plaintiff cannot be required to elect upon which theory to proceed. Campbell v. Barnett, 10 Cir., 351 F.2d 342, 344; Pulliam v. Gulf Lumber Co., 5 Cir., 312 F.2d 505, 507; Herlihy Mid-Continent Co. v. Bay City, 6 Cir., 293 F.2d 383, 385; see 2A Moore's Federal Practice ¶ 8.31 [2].

This case was submitted to the jury on special interrogatories without a general verdict, as authorized by Rule 49(a). No objections were made to the interrogatories submitted. All of the answers of the jury to the interrogatories are supported by substantial evidence and none of such answers is inconsistent with any other answer.

It is entirely possible under an appropriate evidentiary setting to sustain a finding of liability under both scope of employment and negligent entrustment, prove one but not the other, or prove neither. The advantage of the special interrogatories submission over a general verdict is that if an appellate court finds liability supported under one theory but not the other, it is then possible to determine whether the jury made the requisite fact finding to support the judgment.

■ The judgment of the trial court in this case is fully supported by the fact issues determined by the interrogatories. Plaintiffs have of course but one cause of action to recover for the wrong done by the defendants in this particular collision and can make no additional recovery so far as actual damages are concerned by asserting two theories of recovery. See Towle v. Boeing Airplane Co., 8 Cir., 364 F.2d 590, 592–593. The actual damages incurred under each theory asserted are the same and no

double recovery has been awarded by the judgment entered.

In the instant case, we do not have before us a situation where liability has been admitted on the scope of employment theory. In such a situation, some cases such as Shielee v. Hill, 47 Wash. 2d 362, 287 P.2d 479, do not permit proof of negligent entrustment when liability under the scope of employment theory is admitted upon the basis that such proof is unnecessary to sustain recovery and that hence no occasion arises for permitting the introduction of evidence under the negligent entrustment theory which would not be admissible in scope of employment cases. Hugh Breeding, Inc., both in the trial court and here has consistently urged that the evidence does not support a finding that Bobby Breeding was acting within the scope of his employment. Hence, we are not confronted with the problem of what the Arkansas court would hold if scope of employment were conceded But see Ozan Lumber Co. v. McNeeley, 214 Ark. 657, 217 S.W.2d 341, 8 A.L.R.2d 261; 20 Ark.L. Rev. 101, 106; 8 Am.Jur.2d, Automobiles & Highway Traffic § 573.

No prejudicial error was committed by the submission of interrogatories 4 and 5 to the jury.

IV.

Defendants' brief point IV raises two issues, to wit, (1) the sufficiency of the evidence to support punitive damages, and (2) the propriety of admitting evidence on the net worth of Hugh Breeding, Inc. The trial court, in its ruling denying motion for judgment n. o. v. and for a new trial, disposed of the sufficiency of the evidence question by stating:

"I am also convinced that the plaintiffs made a case for punitive damages, and I do not believe that the dicta in Dunaway v. Troutt, 232 Ark. 615, 339 S.W.2d 613 [618] (1960), holds otherwise. In the case here there is no issue of joint liability of two defendants. The liability asserted is that of the corporation because of

the conduct of its officers, and this is not a liability for which Bobby Breeding can also be held liable. I am convinced that if the question in this case were presented to the Arkansas Supreme Court it would be resolved in favor of the plaintiffs."

Plaintiffs sought punitive damages only on the negligent entrustment claim and only as to Hugh Breeding, Inc. No Arkansas case has been cited or found passing directly upon whether punitive damages are allowable in negligent entrustment cases. As above noted, Judge Young, the able and experienced trial judge who heard this case, expresses the view that such damages are allowable in Arkansas. We find nothing in the Arkansas cases which would compel a contrary conclusion.

In Miller v. Blanton, 213 Ark. 246, 210 S.W.2d 293, 3 A.L.R.2d 203, the allowance of exemplary damages was upheld. Liability there was based upon respondeat superior and punitive damages against the employer were upheld even though there was no showing of participation, authorization or ratification of the wrongful and wilful act by the employer. The court notes that in some jurisdictions no liability for punitive damages would exist under such circumstances, and then goes on to state:

"But in most jurisdictions, 'exemplary or punitive damages may be recovered from an employer for acts or omissions of his employee done or omitted to be done in the scope and course of his employment whenever the employee's acts are of such character as to form the basis for an allowance of exemplary damages, even though these acts were done without the employee's [employer's] knowledge or authorization and were not subsequently ratified by him, regardless of whether he did or did not know the servant to be incompetent or disqualified for the service in which he was engaged.'" 210 S.W.2d 293, 296.

The court then observes that Arkansas follows the liberal rule stated in the quotation immediately above.

In Life & Casualty Ins. Co. of Tenn. v. Padgett, Ark., 407 S.W.2d 728, 729, the Arkansas court with respect to the liability of the master for a wilful tort of the servant, states:

"We think the law as it stands today is fairly summarized in the Restatement of Torts, where it is said that the master is subject to liability for his servant's intentional tort 'if the act was not unexpectable in view of the duties of the servant.' Restatement, Torts (2d), § 245 (1958)."

In Dun & Bradstreet, Inc. v. Nicklaus, 8 Cir., 340 F.2d 882, a libel and slander case arising under Arkansas law, we followed the standard for determining malice set forth in Dun & Bradstreet, Inc. v. Robinson, 233 Ark. 168, 345 S.W. 2d 34, stating:

"The applicable standard, as stated in the *Robinson* case, is that plaintiff need not show malice on the part of the defendant in the moral sense (hate, vindictiveness, animosity), but need only show the *doing of an act without just cause or excuse*, which is in reckless disregard as to its results upon the rights of others. We think that there was sufficient evidence of 'conscious indifference' for the district court to properly submit this issue and the matter of punitive damages to the jury." 340 F.2d 882, 886.

From the foregoing authorities, it would appear that the Arkansas court when faced with a choice tends to follow the more liberal rule with respect to allowance of punitive damages.

 The court by interrogatory number 7, supra, submitted to the jury the issue of whether Hugh Breeding, Inc., was guilty of wilful and wanton misconduct in entrusting its vehicle to Bobby Breeding. We believe that there is adequate evidence of prior intoxication on the part of Bobby Breeding and knowledge thereof by the corporation to support the affirmative answer of the jury on this issue.

 On the second issue raised on this brief point, appellants urge that

under Dunaway v. Troutt, 339 S.W.2d 613, the plaintiffs by making two parties defendants waived any right it might have had to recover punitive damages. After the judgment here appealed from was entered, the Supreme Court of Arkansas in Life & Casualty Ins. Co. of Tenn. v. Padgett, supra, overruled *Dunaway* and held that punitive damages could be awarded when plaintiff sued two or more defendants for such damages. Such decision is controlling here and establishes that plaintiffs have not waived any right to punitive damages by the joinder of two defendants in this case. This is conceded by the defendants in their reply brief.

In *Padgett,* the jury allowed $15,000 actual damages and $35,000 punitive damages against both the employer and the servant. The extent of injuries incurred in the fight are not shown in the opinion. The court held that the admission of testimony of the financial status of the corporate defendant was erroneous and prejudicial with respect to both actual and punitive damages. The case was remanded for a new trial. The basis of the decision appears to be that one defendant should not be punished for his co-defendant's wealth. The reasoning for the decision in *Padgett* does not apply to the judgment here against Hugh Breeding, Inc. The evidence is that the corporate defendant's net worth is $562,000. There is no substantial evidence as to Bobby Breeding's net worth. If the corporation had been sued alone, evidence of its net worth would be admissible on the punitive damage issue. We cannot conceive of any possible prejudice to the corporation by the joinder of Bobby Breeding as a defendant. The situation with respect to Bobby Breeding is somewhat different and presents a more troublesome problem. Neither of the defendants has raised before us the issue that actual or punitive damages awarded were excessive. They have not chosen to set out in the record the evidence relating to damages. Judge Young, who heard all the evidence, in his order overruling defendants' motions, states:

"Neither do I think the damages to be excessive. The proof actually would have supported higher amounts for compensatory damages to both Mr. and Mrs. Massey. The amounts or punitive damages were, of course, within the reasonable discretion of the jury, and under the facts I do not think their awards were excessive."

The trial court gave proper and detailed separate instructions with respect to the assessment of actual and punitive damages. We find no basis in the present record for assuming that the jury did not follow such instructions, particularly in the absence of a showing that the damages are excessive. No punitive damages were allowed or assessed against Bobby Breeding.

We believe that what was said in *Padgett* relative to the damage issues applies to the fact situation in that particular case. It would seem that the issue of whether the reception of objectionable evidence constitutes prejudicial error cannot be covered by any general rule but must be determined on a case-to-case basis upon the record in the particular case. This case is distinguishable from *Padgett* on the ground that exemplary damages are claimed only against the corporate defendant, and also likely upon the basis that the actual damages here are far more severe than those apparent in *Padgett.*

Moreover, appeals from federal district courts are subject to the harmless error rule, Rule 61 Fed.R.Civ.P., which applies to the effect of erroneous admission or exclusion of evidence.

We are not persuaded that the admission of evidence of Hugh Breeding, Inc.'s, net worth had any prejudicial effect on the amount of actual damages awarded against Bobby Breeding.

## V.

Finally, defendants urge that the court erroneously received testimony concerning Bobby Breeding's arrests, convic-

tions and pleas of guilty on driving while intoxicated charges on prior occasions. Bobby Breeding testified without objection that prior to May 17, 1963, he had been involved in five instances between 1955 and 1962 that involved driving his personal vehicle while intoxicated, four of which involved wrecks. Over objection, he testified that he entered pleas of guilty in each instance.

 A plea of guilty to an offense directly related to plaintiffs' cause of action is admissible as a declaration against interest. Harbor v. Campbell, 235 Ark. 492, 360 S.W.2d 758. However, a plea of guilty to an offense at some prior time is generally not admissible even for impeachment purposes. Garver v. Utyesonich, 235 Ark. 33, 356 S.W.2d 744.

 In negligent entrustment cases, a crucial issue is the habit or propensity creating incompetency—here driving while intoxicated—and proof that the entrustor of the vehicle is charged with knowledge of the habit. In such cases, Arkansas permits proof of either specific acts or general reputation in the community. Arkansas-Louisiana Lumber Co. v. Causey, 312 S.W.2d 909. Pleas of guilty to traffic offenses are relevant as specific acts in negligent entrustment cases. Arkansas-Louisiana Lumber Co. v. Causey, supra; Chaney v. Duncan, 110 S.W.2d 21, 22; see 20 Ark.L.Rev. 101, 103.

 In our present case, knowledge of the driver's incompetency is established by knowledge of the managing officers of the corporation of the convictions. The court in its instructions in plain terms advised the jury of the limited purposes for which such testimony could be considered and told the jury that such evidence was not admissible and could not be considered as having any bearing upon the question of whether Bobby Breeding was intoxicated or negligent at the time of the accident involved in this case. Defendants have not satisfied us that any prejudicial error was committed in receiving such testimony here under consideration.

We have examined the record and are satisfied that the defendants and each of them in all respects had a fair trial. The instructions of the court were entirely fair. No exceptions to instructions or failure to give any requested instruction other than those hereinabove are made a ground for reversal.

The judgment is affirmed.

HEANEY, Circuit Judge (dissenting).

The Arkansas Supreme Court has not specifically ruled on the question of whether it is proper to permit a plaintiff to plead and attempt to prove the facts necessary to establish liability under both respondeat superior and negligent entrustment. The Court has, however, indicated in Ozan Lumber Co. v. McNeely, 214 Ark. 657, 217 S.W.2d 341 (1949), that a plaintiff has a right to proceed under both theories when the defendant denies that the employee is acting within the scope of his employment and also denies the negligent entrustment. See also R. J. Reynolds Tobacco Co. v. Newby, 145 F.2d 768 (9th Cir. 1944); Crowell v. Duncan, 145 Va. 489, 134 S.E. 576, 50 A.L.R. 1425 (1926); 8 Am.Jur.2d Automobiles and Highway Traffic § 573 (1963); 20 Ark.L.Rev. 101, 106, n. 37 (1966).

Arkansas law makes it clear that when the driver is the sole defendant, evidence of his incompetence is inadmissible. See Garver v. Utyesonich, 235 Ark. 33, 356 S.W.2d 744, 747 (1962); Dixie Culvert Mfg. Co. v. Richardson, 218 Ark. 427, 236 S.W.2d 713, 714 (1951). It also makes clear that when a plaintiff elects to proceed under the theory of respondeat superior against the driver and the owner, evidence of the driver's incompetence is inadmissible, for the Company is liable irrespective to the competence of its employee. See Miller v. Blanton, 213 Ark. 246, 210 S.W.2d 293 (1948); St. Louis, I. M. & S. Ry. Co. v. Stroud, 67 Ark. 112, 56 S.W. 870 (1899). Evidence of the driver's incompetence is admissible, however, if the ac-

tion is brought against the Company only under the theory of negligent entrustment. See Arkansas-Louisiana Lumber Co. v. Causey, 228 Ark. 1130, 312 S.W. 2d 909 (1958); Chaney v. Duncan, 194 Ark. 1076, 110 S.W.2d 21 (1937).

The difficulty with permitting a plaintiff to proceed under both theories against both the driver and the owner of the vehicle is that evidence of the employee's incompetence is susceptible to being considered by the jury for purposes other than for which it was received. Thus it may, despite instructions to the contrary, be used by the jury to determine the driver's negligence or the amount of the compensatory damages to be awarded. See 51 Minn.L.Rev. 264 (1966); 44 Harv.L.Rev. 1173, 1207 (1931).

As a result of the problems raised, a few courts have expressed reluctance to receive evidence of prior acts, even in a negligent entrustment case. See Lix v. Gastian, 261 S.W.2d 497 (Mo.App. 1953); Fambro v. Sparks, 86 Ga.App. 726, 72 S.W.2d 473 (1952); Houlihan v. McCall, 197 Md. 130, 78 A.2d 661, 665 (1951).

While one cannot predict with certainty whether the Arkansas Supreme Court would permit plaintiffs to proceed as they did in this case, there are indications that they would. While I concur with my colleagues that logic supports the view that they should be permitted to so proceed, it, in my judgment, is equally logical that once the issue is submitted to the jury, it must be instructed that if it finds for the plaintiffs on the issue of respondeat superior, it should not make any findings on the issue of negligent entrustment. This was not done here. While under ordinary circumstances such error might not be prejudicial, I believe that it was in the instant case.

If the plaintiffs are permitted to proceed in the alternative, it is essential that when evidence of incompetence is received, the jury be instructed that it is to use such evidence *only* for the purpose of establishing the employee's prior incompetence and the employer's knowl-edge thereof; and that it is not to use such evidence in deciding whether the employee is negligent or in determining the extent of compensatory damages. If evidence of incompetence is admitted without the imposition of at least these safeguards, prejudice to the defendants will inevitably result. In this case, the precautionary instructions were not given and, in my judgment, the probabilities of prejudice are too significant to be overlooked.

The original Complaint alleged that Bobby Breeding was guilty of willful and wanton negligence for driving the vehicle under the influence of intoxicating liquor. It also alleged that the Company was guilty of negligence in entrusting the vehicle to Bobby Breeding because it knew or ought to have known that he was reckless and incompetent in the operation of motor vehicles because of his habitual intoxication. Punitive damages were demanded from Bobby Breeding and the Company.

The Complaint was amended before trial to add allegations that the Company knew Bobby Breeding was addicted to the use of intoxicating liquors, and that Hugh Breeding, Inc., was guilty of willful and wanton negligence in retaining Bobby Breeding in its employment; and to delete the request for punitive damages against Bobby Breeding.

The amendments were designed to make possible an award of punitive damages against the Company which could not have been recovered under the original Complaint, for under Arkansas law existing at that time, a plaintiff waived his claim to punitive damages by suing two or more defendants. Dunaway v. Troutt, 232 Ark. 615, 339 S.W.2d 613 (1960); see 19 Ark.L.Rev. 190 (1965); 15 Ark.L.Rev. 208 (1961).

After appeal was perfected in this case, the Arkansas Supreme Court overruled *Dunaway*, and held that punitive damages could be awarded when a plaintiff sued two or more defendants for such damages, but that by doing so, a plaintiff waived his right to prove the financial condition of any of them. Life &

Cas. Ins. Co. of Tennessee v. Padgett, 407 S.W.2d 728 (1966). In so holding, it conformed the Arkansas rule to that laid down by the United States Supreme Court in Washington Gas Light Co. v. Lansden, 172 U.S. 534, 19 S.Ct. 296, 43 L.Ed. 543 (1898). See Annot. 63 A.L.R. 1405 (1929); 25 C.J.S. Damages § 123 (3) (1966).

In the present case, the trial court permitted testimony on the net worth of the Company to be introduced. The appellants objected to its introduction on two grounds: first, that there was not sufficient evidence to justify the submission of the issue of punitive damages; and, second, that punitive damages are not allowable when more than one defendant is joined in the action.

Under Arkansas law, the appellees could have recovered punitive damages against both the appellants by proving that Bobby Breeding was guilty of willful and wanton negligence, even though the Company had no knowledge of Bobby Breeding's incompetence. Miller v. Blanton, supra; Pine Bluff & A. R. Ry. Co. v. Washington, 116 Ark. 179, 172 S.W. 872 (1915). See also 44 Harv.L.Rev., supra; Prosser & Smith, Torts p. 631 (3d ed. 1962); 35 Am.Jur. Master and Servant § 591 (1941).

In *Pine Bluff*, the Court stated:

"* * * This court has adopted what is usually called the rule of general liability, which has been defined as follows: 'A corporation may be held liable to exemplary or punitive damages for such acts done by its agents or servants acting within the scope of their employment as would, if done by an individual acting for himself, render him liable for such damages.' See case note to 48 L.R.A. (N.S.), page 38." 172 S.W. at 873.

In Miller v. Blanton, supra, the Arkansas Supreme Court, with two Justices dissenting, stated:

"The evidence showed that Miller, after drinking intoxicating liquor to the extent that his talk and his walk were noticeably affected, and to the extent that, according to his own statement, he was 'half drunk', entered his car and sought to drive it over an improved state highway. * * *

"When Miller imbibed alcoholic liquor he knew that he was taking into his stomach a substance that would stupefy his senses, retard his muscular and nervous reaction, and impair, if not destroy, the perfect coordination of eye, brain and muscles that is essential to safe driving. After Miller voluntarily rendered himself unfit to operate a car properly he undertook to drive his automobile, a potentially lethal machine, down a well traveled highway. * * *

* * * * * *

"It is argued by appellant, Columbia Pictures Corporation, that punitive damages against it were not recoverable because there was no proof that it participated in, authorized or ratified, Miller's wrongful conduct.

* * * * * *

"But in most jurisdictions, 'exemplary or punitive damages may be recovered from an employer for acts or omissions of his employee done or omitted to be done in the scope and course of his employment whenever the employee's acts are of such character as to form the basis for an allowance of exemplary damages, even though these acts were done without the employee's [employer's] knowledge or authorization and were not subsequently ratified by him, regardless of whether he did or did not know the servant to be incompetent or disqualified for the service in which he was engaged.'" 210 S.W.2d at 294–296.

But here, the appellees do not posit their right to recover punitive damages from the Company on the theory of respondeat superior. They seek to impose punitive damages on the Company on the theory that it was guilty of willful and wanton negligence in permitting an employee whom they knew to be incompetent to drive its truck on the public highways of Arkansas, and to do this without a determination that the em-

ployee was also guilty of willful and wanton negligence.

Neither party to this appeal has cited an Arkansas case authorizing recovery of punitive damages against an employer on the above theory. I have examined the leading cases under which the Arkansas Supreme Court has awarded relief to a plaintiff on the theory of negligent entrustment, and have been unable to find any which assessed an employer for punitive damages for entrusting a vehicle to an incompetent driver. The simple explanation may be that no other plaintiff has proceeded on this theory because of the relative ease of recovering punitive damages from an employer without proof of wrongdoing on his part.

In support of their position, the appellees cite a sentence (italicized below) in 22 Am.Jur.2d Damages § 257 (1965). A reading of the complete paragraph indicates that it does not support their contention that an employer can be found guilty of willful and wanton negligence without a finding of such negligence on the part of the employee. The full statement, as set forth in 22 Am.Jur.2d Damages § 257 (1965), is:

"It is elementary that a master or principal, as the case may be, is responsible in damages for the wrongful act of a servant or agent done within the scope of his employment. The question arises whether the damages recoverable may include exemplary or punitive damages as in cases of individuals acting for themselves. While there are a few early cases holding that the principal or master is never liable for exemplary damages, it is now generally conceded by all courts which permit the recovery of such damages may be imposed upon an employer for acts of his agents or servants when those acts are of a character to warrant the imposition of such damages. This principle applies both to natural persons and to corporations in the capacities of master or principal. Although many courts qualify the rule by taking the position that the master or principal is liable for exemplary damages only if he has authorized or ratified the act of the agent or servant, others take the view that he is liable for such damages regardless of whether he has authorized or ratified the act of his agent or servant. *Under either view the employer may be held liable for such damages when he is chargeable with gross neglect in the employment or retention in his service of an incompetent employee, knowing at the time of his unsuitability.*"

It is clear, from a reading of the entire paragraph, that the writer is discussing employer liability under the theory of respondeat superior. He concludes the section with the following paragraph:

"In most instances, exemplary damages will not be imposed against the employer unless they might also be imposed against the employee in a suit against him; however, an innocent or negligent act of the employee may involve misconduct of the employer, so that the latter will then incur liability for exemplary damages for his own wrong."

Miller v. Blanton, supra, and American Fidelity & Casualty Co. v. Farmer, 77 Ga.App. 166, 48 S.E.2d 122 (1948), are cited to support the above American Jurisprudence analysis. These cases do not support the appellees' contention, for, in each, there had been a finding of willful and wanton negligence on the part of the employee and the court imputed liability to the employer.

It would appear, then, that the issue which we are called upon to decide was not clearly raised by either party before the lower court.

The United States Supreme Court, while showing a reluctance to impose punitive damages on an employer who is without fault, has indicated that if the employer is at fault, it ought to be amenable to the severest rule of damages. See Lake Shore & Mich. So. Ry. Co. v. Prentice, 147 U.S. 101, 13 S.Ct. 261, 37 L.Ed. 97 (1893); Milwaukee & St. Paul Ry. Co. v. Arms, 91 U.S. 489, 23 L.Ed. 374 (1876); Northwestern Na-

tional Casualty Co. v. McNulty, 307 F.2d 432 (5th Cir. 1962). The Supreme Court said, 147 U.S. at page 107, 13 S.Ct. at page 263, in *Prentice*:

"Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender, and as a warning to others, can only be awarded against one who has participated in the offense. A principal, therefore, though of course liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive, or malicious intent on the part of the agent".

The Supreme Court went on to state:

" * * * If a railroad company, for instance, knowingly and wantonly employs a drunken engineer or switchman, or retains one after knowledge of his habits is clearly brought home to the company, or to a superintending agent authorized to employ and discharge him, and injury occurs by reason of such habits, the company may and ought to be amenable to the severest rule of damages; but I am not aware of any principle which permits a jury to award exemplary damages in a case which does not come up to this standard * * *." 147 U.S. at 116, 13 S.Ct. at 266.

Despite the lack of authority, it would appear that there are stronger public policy reasons to punish an employer whose act indicates a conscious disregard for the rights of others than to punish one who is without fault, on the theory that his servant was guilty of willful and wanton negligence which the employer neither authorized nor ratified. In view of the above decisions of the Arkansas Supreme Court and the general attitude of that Court towards driving while drunk, it is my judgment that the Arkansas Supreme Court would approve the right of appellees to recover punitive damages from an employer who is found to have been guilty of willful and wanton negligence in permitting an employee it knows to be incompetent to operate a vehicle on the public highways when the employee's incompetence is the cause of the accident.

I come, then, to the question of whether the issue of willful and wanton negligence was properly submitted to the jury.

While the instructions given on willful and wanton negligence would, in the ordinary case, have been sufficient and while they were given in the form approved in the Arkansas Model Jury Instructions, I do not believe that they were sufficient in this case in view of the unique theory on which the appellees proceeded.

In view of the fact that the issue of negligent entrustment and willful and wanton negligence were both submitted to the jury, the jury ought to have been instructed in greater detail as to the difference in the proof required to establish each, and willful and wanton negligence ought to have been more carefully defined. See Ellis v. Ferguson, 238 Ark. 776, 385 S.W.2d 154 (1965); Harkrider v. Cox, 232 Ark. 165, 334 S.W.2d 875 (1960); Edwards v. Jeffers, 204 Ark. 400, 162 S.W.2d 472 (1942); Mathes & Devitt, Federal Jury Practice and Instructions § 76.10 (1st ed. 1965); Annot. 98 A.L.R. 267, 271 (1935).

The failure to do so, in my judgment, was prejudicial error.

I turn then to the question of whether evidence as to the Company's net worth was properly received.

Most courts refused to permit evidence of net worth in cases where two or more persons are sued for punitive damages because of the danger that wealth or lack of it may prejudice one or more of the defendants. This is clearly the Arkansas law. In Life & Cas. Ins. Co. of Tennessee v. Padgett, supra, 407 S.W.2d at 730, the Court said:

"We think the law was correctly stated in the *Lansden* case and that we misconstrued that holding in Dunaway v. Troutt. In the court below the

Padgetts were permitted to prove that Life & Casualty had a net worth of about sixty-one million dollars and that Skinner had a net worth of about one thousand dollars. Under the *Lansden* case the admission of that evidence was reversible error.

\* \* \* \* \* \*

"\* \* \* The reason for the rule —that one defendant should not be punished on the basis of another defendant's wealth—applies just as well to employers and employees as to others not standing in that relation. \* \* Chicago City Ry. Co. v. Henry, 62 Ill. 142 (1871); Dawes v. Starrett, 336 Mo. 897, 82 S.W.2d 43 (1935); McAllister v. Kimberly-Clark Co., 169 Wis. 473, 173 N.W. 216 (1919)."

In *Padgett*, the Court held also that such evidence may prejudice the verdict for compensatory damages when the issues are so intertwined that the jury may have difficulty in separating them.

"Does the erroneous admission of the testimony about the appellants' financial means affect the judgment for actual damages as well? In law cases two issues may be so interwoven that an error with respect to one requires a retrial of the whole case. Mowery v. House, 234 Ark. 878, 355 S.W.2d 275 (1962). *That is the situation here with reference to the compensatory and exemplary damages. It is hardly possible that the jury did not take each into consideration in fixing the other. Furthermore, the inadmissible proof of the defendants' worth may have influenced the jury in its assessment of compensatory damages. The only way in which we can with certainty protect the appellants from the possibility of prejudice is to grant a new trial upon all issues.*" 407 S.W.2d at 730. (Emphasis added.)

In St. Louis, I. M. & S. Ry. Co. v. Hall, 53 Ark. 7, 13 S.W. 138 (1890), the Arkansas Court found that the punitive damages had been improperly allowed. The Court, in determining whether it should grant a new trial or a remittitur of the punitive damages, said:

"\* \* \* In this cause the jury had properly before them the plaintiff's expenses, his loss of time, his diminished capacity for labor, and his pain, anguish, and suffering. The difficulties which would beset a court in determining the justness or excessiveness of a verdict based upon these premises alone would not be inconsiderable. But superadd the element of punitive damages, erroneously allowed, and the process by which the court is to dissect the verdict, eliminate the error, eliminate the excess of compensation, and settle upon the exact sum which plaintiff's case entitles him to have, 'passeth all understanding.' To attempt it, we think would be a violation of the spirit of the constitution, which intends that every litigant shall have a trial of his cause before an impartial jury, upon proper declarations of the law. Reversed and remanded." 13 S.W. at 140.

See also Thomas v. Durham Motors, Inc., Mo.App., 389 S.W.2d 412 (1965); McAllister v. Kimberly-Clark Co., 169 Wis. 473, 173 N.W. 216 (1919).

In the present case, the issues were interwoven and difficult to understand. While punitive damages were requested from the Company only, compensatory damages were demanded from both the Company and Bobby Breeding. Under these circumstances, it was essential that there be a thorough understanding on the part of the jury of the issues involved. I do not believe that it had this understanding. It was not instructed when evidence of net worth was received about the purpose for which it was being received, and it was not cautioned in the final instructions about not using evidence of the Company's net worth in fixing compensatory damages against either of the joint defendants.

Under these circumstances, it was an error to admit testimony about the Company's net worth, and the error cannot

be cured by remitting the punitive damages.

Nor does Judge Young's finding that the verdicts were not excessive resolve the difficulty. A verdict which is not excessive may, nonetheless, have been substantially affected by the receipt of improper evidence. Judge Young's statement does not go to this probability.

While I concur with my colleagues that the plaintiffs had a right to proceed as they did in this case, this right carried with it the responsibility of assuming some responsibility to make sure that the jury was completely and adequately instructed at every step of the proceedings as the probabilities of confusion and prejudice were great. The jury was not so instructed and, in my judgment, the probabilities of substantial prejudice to the appellants is present.

I am aware that Rule 51 of Federal Rules of Civil Procedure, 28 U.S.C.A., provides that no party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, and I am also aware of the requirement that such failure be argued before this Court. But, as indicated in Evanston Cab Co. v. City of Chicago, 325 F.2d 907 (8th Cir. 1963), there can be a plain error exception to Rule 51 in the exceptional case where the error has seriously affected the fairness of the judicial proceedings. In my judgment, this is that type of case, and the matter should be remanded for a new trial. See also Freifield v. Hennessy, 353 F.2d 97 (3d Cir. 1965); Moore v. Smith, 343 F.2d 206 (3d Cir. 1965).

In *Hennessy,* the Court, 353 F.2d at page 99, said:

"The defendant argues that since the plaintiff interposed no objection to the court's instructions he may not now complain of error therein. This argument is in accord with the general rule which is subject to exception. Hormel v. Helvering, 312 U.S. 552, 557, 558, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); Mazer v. Lipschutz, 327 F.2d

42, 52 (3rd Cir. 1964); McNello v. John B. Kelly, Inc., 283 F.2d 96, 101, 102 (3rd Cir. 1960); Callwood v. Callwood, 233 F.2d 784, 788 (3rd Cir. 1956). Where it is apparent on the face of the record that counsel failed to object to a fundamental and highly prejudicial error, and this failure may have resulted in a miscarriage of justice, the error must be noticed and rectified. Ibid. This exception to the general rule is applicable to the instant case."

This Court has freely expressed its confidence in the jury system. I do so again; but if a jury is to operate effectively, it must be adequately and carefully instructed.

I would reverse and remand for a new trial.